# HAYES v. PALMER.

EXTRADITION; CRIMINAL LAW; INDICTMENT; JUDICIAL NOTICE; FUGITIVE FROM JUSTICE; BURDEN OF PROOF; GAMBLING HOUSE.

1. In extradition proceedings it is immaterial that the indictment found against the accused in the demanding State does not show indorsement as a true bill over the signature of the foreman of the grand

---

\* In the present case the petition for the writ of *certiorari* was entitled in the name of the plaintiff in the justices' court, as plaintiff, and the defendants therein, as defendants. The writ was issued as prayed and the justice made return to it. The motion to quash which followed was made by the attorneys for the plaintiff in the justices' court, who also gave notice to the petitioner's attorney when the motion would be called up for hearing. They also gave directions to the clerk of the lower court as to what should be included in the transcript of the record on appeal. The justice did not appear in his own behalf or by counsel and took no part in the proceeding, save to make the return.— REPORTER.

jury; especially where the proceedings against the petitioner in that State, as shown by the record accompanying the requisition, appear to be in accordance with the statutory practice of that State, judicial notice of which may be taken here.

2. The technical sufficiency of the indictment of a person who is sought to be extradited, is a matter for the determination of the proper court of the demanding State, and the fact that the requisition recites that he " stands charged with the crime of gambling " and nothing more, does not constitute a fatal defect or omission where " gaming " and " gambling," which mean substantially the same thing, are use as convertible terms in the indictment, made a part of the requisition.

3. The brief description of the crime for which a person is sought to be extradited, contained in the requisition, may be regarded in the extradition proceedings, as supplemented by the descriptions of the crime contained in the indictment and a bench warrant issued thereon, when the latter are made parts of the requisition.

4. The chief justice of the Supreme Court of this District is charged with the same duties in extradition proceedings as are imposed on the governors of the several States.

5. While the actual presence of the accused in the demanding State, at the time of the commission of the crime as charged in the indictment, is an essential condition of extradition, the warrant of the governor thereof is *prima facie* evidence that the accused is a fugitive from justice, whether the writ so recites or not, and is sufficient to justify the removal of the accused, unless he overcomes the presumption so created by conclusive evidence.

6. Testimony of a person sought to be extradited who was indicted in Prince George's county, Maryland, for keeping " a gaming table for gambling " and with keeping and managing " a house for gambling " on June 2, 1902, that he was not in Maryland on that date, but that he had been there shortly before and frequently during that summer, is insufficient to meet the *prima facie* case of the State; but he should show with precision of statement the date of his departure from Maryland, in which event it would devolve upon the State to show that he was a fugitive from justice by producing evidence that he was in the State at the time charged in the indictment, or prove that the date had been erroneously charged and could be carried back to the necessary time.

7. The charge in such an indictment that the accused kept and managed a house for gambling, implies a crime of a continuous nature, and if he did so, in violation of the law of that State, going between it and this District, both before and after the date alleged in the indictment, proof by the State in the extradition proceedings that

he was personally present each time a game was exhibited therein,
would not be essential to constitute him a fugitive from justice.

8. Where in such extradition proceedings the accused admits that he
was in Maryland frequently during the summer and again shortly
before June 2, 1902, the date on which he was charged in the
indictment there with keeping a gaming table and house for gamb-
ling; that he had leased the premises in question, without stating
when, but had previously sublet them to the barkeeper of his saloon
in this District, who was in control on June 2, 1902, and in whose
name the license to sell liquor stood on that date, the question is
raised, which is one for the determination of the proper trial
court of Maryland, whether the substitution of the barkeeper,
as lessee of the premises and with sole responsibility for the uses
to which they might be applied, was an act of good faith or
collusion merely.

9. Evidence on behalf of the accused in extradition proceedings that he
had been in the demanding State several times after his indict-
ment there, and that no effort had been made to arrest him, is
immaterial.

No. 1278.  Submitted March 4. 1903.  Decided April 7, 1903.

HEARING on an appeal by the petitioner from an order of
the Supreme Court of the District of Columbia discharging
a writ of *habeas corpus*.                *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a judgment discharging a writ of
*habeas corpus* that had been obtained to arrest the execution
of a warrant for the extradition of the appellant.

The return of the marshal to said writ shows:  That on
October 28, 1902, the governor of Maryland issued a requisi-
tion directed to the chief justice of the Supreme Court of
the District of Columbia for the arrest and return of John
Hayes, alleged to have been charged by indictment in that
State with the crime of " gambling," and to have fled from
justice and taken refuge in the said District.

That accompanying said requisition, and made a part
thereof by reference, were duly-certified copies of the follow-
ing records of the circuit court of Prince George's county,

Maryland: 1st. A presentment of the grand jury of said court, made October 11, 1902, to the effect that John Hayes, late of said county, kept a gaming table therein on June 2, 1902. 2d. An indictment filed therewith containing six counts, charging John Hayes with keeping " a gaming table, for gambling," and with keeping and managing a " house for gambling " in said county, on June 2, 1902, contrary to the form of the statute, etc. (This indictment was signed by the State's attorney, but neither signed nor indorsed by the foreman of the grand jury.) 3d. An unexecuted bench warrant for the arrest of said John Hayes upon the charge in said presentment and indictment. That he held the said Hayes under a warrant for his arrest, issued by the chief justice of the District in response to the requisition aforesaid.

The bill of exceptions, duly reserved at the hearing, recites the oral evidence then submitted, as follows:

" The petitioner offered evidence tending to prove that he was now and for seventeen years last past had been a resident of the District of Columbia, where, in the city of Washington, he owned and operated a saloon, and that one Pumphrey was, and for several years last past had been his barkeeper at said saloon; that on the second day of June, 1902, being the date named in the indictment and requisition, which said indictment and requisition were duly made part of the return of the respondent herein, he, the said Hayes, was not within the State of Maryland, but that he had been in said State and in the county of Prince George shortly before said date and shortly after said date, and frequently during the summer of 1902. Petitioner further offered evidence to show that the premises upon which the said offense charged in said indictment was alleged to have been committed were at the said date in the possession of said Pumphrey, to whom the petitioner, who was lessee of the premises, had previously sublet the same, and that the said premises were not at the date of the said alleged offense under the control of the petitioner, and that the license to conduct the retail liquor business upon the said day, on said 2d day of June, was in the name of said Pumphrey; that since proceedings in the county of

Prince George in the State of Maryland had been instituted by the proper authorities for the prosecution of said petitioner upon the charges set forth in the indictment accompanying said requisition papers had been commenced, and while such prosecution was actually in progress, the said petitioner had been on several occasions within said county openly and without concealment and in the daytime, and that no effort had been made on his part since the institution of said proceedings to evade service of process in said county.

" The respondent thereupon offered evidence tending to show that the sheriff of Prince George county had had since the date of the finding of said indictment, and still had in his possession a bench warrant for the arrest of petitioner for the offense alleged in said indictment, and that the said sheriff had since been unable to serve said warrant on petitioner in the said State, and had not seen him there."

*Mr. Lorenzo A. Bailey* for the appellant:

1. Appellant's testimony that he was not in Maryland on June 2, 1902, is uncontradicted. It is clear that this case comes within the well-established principle that mere constructive presence of the accused at the time and place of the alleged offense is not a sufficient basis for his surrender as a fugitive from justice. *People ex rel. Corkran* v. *Hyatt, infra; State* v. *Hall,* 115 N. C. 811; 28 L. R. A. 289; Spear on Extrad., p. 396 *et seq.;* 2 Moore on Extrad., pp. 935, 936 *et seq.; In re Lyon,* 24 West. Law Rep. 679; *Jones* v. *Leonard,* 50 Iowa, 106; Church on Hab. Corp., Sec. 478.

2. In *habeas corpus* proceedings, the court may go outside the papers and hear evidence as to the actual presence of the accused in the demanding State at the date of the alleged offense, and if such presence be not shown the requisition will not be honored. Spear on Extradition, 482; *Ex parte Tod* (S. Dak.), 47 L. R. A. 566; Code D. C., Secs. 1143–1150; *Hall's Case,* 14 W. L. R. 581; *In re Lyon,* 24 W. L. R. 679; *Jones* v. *Leonard,* 50 Iowa, 106; Church on Hab. Corp., Sec. 478. Under the act of Congress the accused

may insist upon proof that he was in the demanding State at the time of the alleged offense and subsequently withdrew therefrom so that he could not be reached by her criminal process. *Ex parte Reggel,* 114 U. S. 642, 29 L. Ed. 250. Without legal evidence of flight " the arrest is not lawful, and whether it is lawful or not is just the question which is to be decided in a *habeas corpus* proceeding." Spear on Requisition (2d ed.), 500.

3. Counsel for the respondent cited below *Roberts* v. *Reilly,* 116 U. S. 95, in support of the proposition that it was sufficient showing of flight, under the act of Congress, that the accused had left the State after committing the crime there and is found in another State. They contended that the *Reggel case* (114 U. S.), above cited, was overruled by *Roberts* v. *Reilly;* but that contention is erroneous. The latter case, in this aspect, is not applicable to the case at bar or to any case in which actual presence of the accused in the demanding State at the time of the alleged offense is not shown. It is applicable only to a case in which such actual presence is shown, and it in no way disturbs the authority of the *Reggel case* for the proposition that the accused may insist on proof of such presence. Counsel for respondent also urged that the evidence offered by the accused that he was in Prince George's county shortly before and shortly after June 2, 1902, and frequently during that summer brought, his case within their interpretation of *Roberts* v. *Reilly,* and that this evidence and the fact that the accused is now found in this District are sufficient proof that he is a fugitive from justice. This contention is shown to be erroneous by the case of *People ex rel. Corkran* v. *Hyatt,* 172 N. Y. 176, which was affirmed by the Supreme Court of the United States on February 23, 1903, in which it appeared that the accused was not in the demanding State on the precise date when the crime was alleged to have been committed, and the court held that his mere temporary presence in the State on other business, some days after the crime, was entirely insufficient to make him a fugitive from justice on departing from the State.

A showing that the accused, charged with crime in one State, is found in another State, is not conclusive, even after his arrest, that he is a fugitive from justice. As stated by Judge Cooley, " Such a construction would be intolerable." Spear on Requisition (2d ed.), 393. See also 2 Moore on Extradition, 904, 905, 919, 920.

4. Intent is the criterion by which to determine whether or not a man has fled from justice. This is the principle declared by Mr. Justice Cox in *Hall's Case,* 14 W. L. R. 581, and upon which he discharged the prisoner in *habeas corpus* proceedings in opposition to a requisition from Maryland, it appearing that the prisoner, though actually present in that State at the time of the alleged crime, had then returned to his home in this District without the intent to flee from justice. The appellant, while his prosecution in Prince George's county was actually in progress, has frequently visited that county openly, without concealment and in the daytime, and has made no effort to evade service of process. His return from these visits was to his home here and without any intent to flee from justice. No evidence was offered to show that any effort was made by the sheriff to find Hayes or to serve process on him. Hayes' conduct throughout has been wholly inconsistent with the contention that he was or is a fugitive from justice. It was not his duty to make search for the sheriff. A " fugitive from justice " is one who " takes himself out of the jurisdiction of the State or Territory in order to escape its justice for a crime which he is conscious of having committed." Spear on Requisition (2d ed.), 380, 381, 382.

5. Flight from justice is a jurisdictional fact and must be established by legal evidence. *In re Woo Doon,* 18 Fed. Rep. 899; Spear on Requisition (2d ed.), 490, 499, 500.

The right to secure removal depends upon the Constitution of the United States, Art. 4, Sec. 2, and the mode of proceeding and the necessary evidence to support the demand are prescribed by Secs. 5278 and 5279 R. S. U. S. *In re Woo Doon,* 18 Fed. Rep. 898.

6. The governor of Maryland has never declared it to be a fact that Hayes is a fugitive from justice. He merely states in the requisition: " Whereas, it has been represented to me that the said John Hayes has fled from justice." Nor does he send any legal evidence that such representation is true. The representation consists merely of the statement of the State's attorney, which is not under oath. The requisition must not only declare the fact that the accused has " fled," but must also be accompanied by legal evidence to prove it. Spear on Requisition (2d ed.), 420, 389; *In re Jackson,* 2 Flipp. 183, 186, 187; *Ex parte Thornton,* 9 Tex. 635. The requisition also erroneously states that Hayes is charged with " gambling."

7. The warrant of arrest issued to the marshal sets forth merely that the governor of Maryland has made demand for John Hayes, " charged in the county of Prince George, in said State, with the crime of gambling, and who, as it is alleged, has fled from the justice of said State." This is fatally defective. Unless the warrant of arrest recites or sets forth the indictment or affidavit upon which it is founded, it is illegal and void. *In re Woo Doon,* 18 Fed. Rep. 898; *In re Jackson,* 2 Flipp. 183, 186, 187; *Ex parte Thornton,* 9 Tex. 635; 3 McLean, 121.

8. The warrant of arrest in this District is also defective and void, because the charge against Hayes is therein stated to be gambling, which is the equivalent of " gaming," but there is no mention of that offense in the indictment. It is wholly distinct from the offense of " keeping a gambling table, to-wit, a slot machine," mentioned in the requisition papers. Am. & Eng. Encyc., titles " Gaming," " Gaming Houses."

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, and *Mr. Wm. M. Lewin,* State's Attorney for Prince George's county, Maryland, for the respondent, the marshal of the United States for the District of Columbia.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. Several assignments of error relating to alleged defects in the requisition may be considered together. We regard: none of these objections as sufficient to warrant the reversal of the judgment and the discharge of the appellant. That the indictment does not show indorsement as a true bill, over the signature of the foreman of the grand jury, is immaterial in this proceeding. *Whitten* v. *Tomlinson,* 160 U. S. 231, 244. Moreover, the record showing the presentment and following formal indictment seems to be in accordance with the practice that prevails in Maryland under statutes of which judicial notice may be taken in a proceeding of this character, if necessary. *Roberts* v. *Reilly,* 116 U. S. 80, 96. The technical sufficiency of the indictment is also a matter for the determination of the court having jurisdiction of the crime therein charged. *Ex parte Reggel,* 114 U. S. 642, 651; *Roberts* v. *Reilly,* 116 U. S. 80, 96; *Whitten* v. *Tomlinson,* 160 U. S. 231, 245. The fact that the requisition recites that the party " stands charged with the crime of 'gambling,'" and nothing more, does not constitute a fatal defect or omission. " Gaming " and " gambling " mean substantially the same thing, and the keeping of tables, devices, or houses for gaming or gambling amounts to the same offense. They are used as convertible terms in the indictment, which, with the warrant issued thereon, was made a: part of the requisition, and the same may be regarded as supplementing the brief description of the crime as stated therein.

2. We come now to the substantial question of the case: Whether, under the evidence adduced, the appellant was: rightly adjudged to be a fugitive from the justice of the State of Maryland ?

The decisions of the Supreme Court of the United States, heretofore cited, all indicate that the actual presence of the accused in the demanding State, at the time of the commission of the crime as charged in the indictment, is an essential condition of extradition. In *Roberts* v. *Reilly, supra,* it was held that the question whether the accused is a fugi-

tive from the justice of the demanding State is one of fact which the governor, upon whom the demand has been made, must decide, upon such evidence as he may deem satisfactory, and that, having decided, his warrant of arrest, " whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof."

In the District of Columbia the chief justice of the Supreme Court thereof is charged with the same duties that in similar proceedings are imposed upon the governors of the several States. In the recent case of *Hyatt* v. *State of New York* (decided February 23, 1903), the Supreme Court has again given interpretation to the Constitution and the law enacted in pursuance thereof, and in an elaborate opinion, delivered by Mr. Justice Peckham, redeclared the rules which must govern all the courts of the Union, State and Federal, in making inquiry into the validity of warrants issued for the arrest and removal of alleged fugitives from the justice of a State. In the course thereof it was said: " We are of opinion that the warrant of the governor is but *prima facie* sufficient to hold the accused, and that it is open to him to show by admissions, such as are herein produced, or by other conclusive evidence, that the charge upon which extradition is demanded assumes the absence of the accused person from the State at the time the crime was, if ever, committed." In that case, where the accused had been arrested under a warrant issued by the governor of New York, upon the requisition of the governor of Tennessee, it was, by admission and evidence, made certain that the accused was not in Tennessee at or between the several dates charged in an indictment for grand larceny and false pretenses, and that the demand for his removal to that State for trial was necessarily based upon the doctrine that a constructive presence of the accused, at the time of the alleged commission of the crime, was sufficient to authorize the demand for his surrender. That doctrine was expressly denied in language, which we quote in part: " In the case before us it is conceded that the relator

was not in the State at the various times when it is alleged
in the indictments the crimes were committed, nor until
eight days after the time when the last one is alleged to have
been committed.   That the prosecution on the trial of such
an indictment need not prove with exactness the commis-
sion of the crime at the very time alleged in the indictment
is immaterial.   The indictments in this case named cer-
tain dates as the times when the crimes were committed, and
where in a proceeding like this there is no proof or offer of
proof to show that the crimes were in truth committed on
some other day than those named in the indictments, and
that the dates named therein were erroneously stated, it is
sufficient for the party charged to show that he was not in
the State at the times named in the indictments, and when
those facts are proved so that there is no dispute in regard
to them, and there is no claim of any error in the dates named
in the indictments, the facts so proved are sufficient to show
that the person was not in the State when the crimes were,
if ever, committed.   *   *   *   The exercise of jurisdiction
by a State to make an act committed outside its borders a
crime against the State is one thing, but to assert that the
party committing such act comes under the Federal statute,
and is to be delivered up as a fugitive from the justice of
that State, is quite a different proposition.   The language
of section 5278, R. S., provides, as we think, that the act
shall have been committed by an individual who was at the
time of its commission personally present within the State
which demands his surrender.   *   *   *   It is difficult to
see how a person can be said to have fled from the State in
which he is charged to have committed some act amounting
to a crime against that State, when in fact he was not within
the State at the time the act is said to have been committed."

It remains to apply the doctrine enounced to the special
facts of the case at bar.   There is neither concession nor
proof that the demand for the arrest and removal of the ap-
pellant to the State of Maryland, as a fugitive from justice
there, was founded on his constructive presence, merely, at
the time of the commission of the crime charged.   The issue

of the warrant made a *prima facie* case of actual presence at
the time charged, and departure from the State thereafter,
which it was incumbent upon the accused to overthrow by
" conclusive evidence."

The absence of a person from, or his presence in, the State
upon the alleged date of the commission of a crime, is a fact
about which others might be uncertain, but the person, him-
self, ought to be able to testify with perfect certainty. The
public policy which prompted the constitutional provision
relating to extradition demands that he shall do so, else the
ease and rapidity with which the country may be traversed
would render one State a comparatively safe refuge for the
criminals of another.

The learned justice who presided on the hearing excluded
no evidence offered by the appellant.

He received all that was offered, but was not convinced by
it. In his opinion it did not show conclusively that the ap-
pellant was not personally present in Maryland at the time
the offense is alleged to have been committed, and we are
not satisfied that it is sufficient to require the reversal of his
judgment.

The appellant testified, it is true, that he was not in Mary-
land on June 2, 1902, but admitted that he had been there
" shortly before," and frequently during that summer.

As to the date that he was there, and exactly how long
before the date of the alleged crime he actually crossed the
boundary line of the State, he was silent. With the con-
stant means of rapid transit between the District of Columbia
and the nearby resorts of Maryland, he might have crossed
the line the very moment before midnight on June 1, accord-
ing to his own record of the time. And this he might have
regarded as being in Maryland " shortly before June 2."

We think it was his duty to meet the *prima facie* case of
the State by proof showing with precision of statement the
date of his departure from Maryland. Had he done so, it
would have devolved upon the State to show that he was a
fugitive from justice by producing evidence that he was in
the State at the time charged in the indictment, or to prove

that said date had been erroneously charged and could be carried back to the necessary time.    Until the discharge of the burden imposed upon him by the *prima facie* case of the State, through the presentation of a distinctly traversable issue, the latter ought not to be called upon to reply.

In *Hyatt* v. *New York* the right to demand extradition depended entirely upon the effect of the constructive presence of the accused in the State when the crime was committed, and it was distinctly stated that the facts showing that condition must be " proved so that there is no dispute in regard to them."    When so proved, the accused must be discharged; when not, he must be remanded.    Evidence, however strong, the practical effect of which is to set up nothing more than a defense of *alibi,* raises an issue that can only be tried by the court having the exclusive jurisdiction to convict or acquit of the crime.    Any other rule would tend, in many cases, to defeat the salutary purpose of the constitutional provision and the law enacted to give it operation.

For example, suppose the case of a party indicted for a secret murder that had been brought to light, long after its commission, by the discovery of the partly decomposed body, or the skeleton of the murdered person; the evidence being entirely circumstantial, and the date of the commission of the crime a matter of conjecture on the part of the grand jury.    The accused, having been arrested in another State as a fugitive from justice, testifies that he was not in the demanding State on the day alleged, but had been there shortly before, and frequently during the same summer, failing, however, to fix the latter dates at all.    Would this evidence be sufficient to impose upon the demanding State the burden of introducing witnesses to prove the various circumstances from which it might reasonably be inferred that the murder had occurred shortly before the date alleged in the indictment?    We think not.

There is, moreover, another reason for regarding the evidence in this case as insufficient.

The appellant was charged not only with keeping a gam-

ing table, a crime which might have been committed by a momentary act, but also with keeping and managing a house for gambling, which implies a crime of a continuous nature. Now, if he went into Maryland and opened a gaming-house in violation of the law of that State, going between it and his Washington place of business both before and after the date alleged in the indictment, is proof that he was personally present at each time that a game was exhibited therein essential to constitute him a fugitive from justice? It seems to us not. Going in person to another State, and opening a house in which gaming may be carried on from day to day, or night to night, is quite different in effect from the single exhibition of a particular gaming device which may be but one of a series of acts indicating the character of the house.

Appellant admitted that he had been in Maryland frequently during the summer and again shortly before June 2, 1902. He admitted, without saying when, that he had leased the premises in question, but stated that he " had previously sublet the same " to one Pumphrey, who was in control on June 2, 1902, and in whose name the license to sell liquor stood on that date.

Appellant owned a saloon in the city of Washington at the same time, and said Pumphrey was the barkeeper therein. Upon this issue the guilt or innocence of the appellant would turn upon the question whether the substitution of Pumphrey, as lessee of the premises and with sole responsibility for the uses to which they might be applied, was an act of good faith or collusion merely. That question is clearly one for the determination of the trial court in the State of Maryland.

The evidence tending to show that appellant had been in Maryland several times after his indictment, and that no effort had been made to arrest him, is immaterial. The fact that he had gone into Maryland after indictment and had not left to escape a pursuing officer operated neither to constitute him a fugitive from justice, if in fact he had not been there at the time of the commission of the crime, nor to relieve him from liability as a fugitive if he was in the State

at that time and had subsequently withdrawn. *Hyatt* v. *New York, supra; Roberts* v. *Reilly,* 116 U. S. 80, 97. In the case last cited it was said: " To be a fugitive from justice, in the sense of the act of Congress regulating the subject under consideration, it is not necessary that the party should have left the State in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply that having within a State committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offense, he has left its jurisdiction and is found within the territory of another."

Having found no error in the judgment appealed from, it will be affirmed, with costs. It is so ordered. *Affirmed.*