**LEE WON SING v. COTTONE, Agent of the State of New York.**

**No. 7947.**

United States Court of Appeals for the District of Columbia.

Decided Nov. 3, 1941.

William H. Collins, of Washington, D. C., for appellant.

Bernard Margolius, Asst. U. S. Atty., of Washington, D. C. (Edward M. Curran, U. S. Atty., and John H. Mitchell and Charles B. Murray, Asst. U. S. Attys., all of Washington, D. C., on the brief), for appellee.

Before GRONER, Chief Justice, and STEPHENS and RUTLEDGE, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from an order of the District Court of the United States for the

District of Columbia dismissing a petition for a writ of habeas corpus and a writ issued thereunder, and remanding the appellant to the custody of the appellee.

The appellee, as an agent of the state of New York in an extradition proceeding, had presented to Chief Justice Wheat of the District Court of the United States for the District of Columbia (who, under the Act of March 3, 1901, 31 Stat. 1340, c. 854, § 930, D.C.Code (1929) tit. 6, § 377, is empowered to act for the District as under the Federal statutes pertinent to interstate extradition the governor of a state may act) a requisition by the governor of New York for the surrender and return of the appellant from the District of Columbia to that state. Chief Justice Wheat, pursuant to the requisition, issued a rendition warrant committing the appellant to the appellee's custody. Thereafter, upon the petition of the appellant, the District Court issued a writ of habeas corpus commanding the appellee to produce the appellant for inquiry in respect of the legality of his detention. The appellee made return and answer and there was a hearing at which two issues raised under the petition and answer were considered, one, whether or not a New York indictment, part of the requisition papers, naming the appellant as defendant, was properly authenticated, and the other, whether or not the appellant was a fugitive from justice. Both issues were determined against the appellant, and his detention by the appellee was held lawful. By assignment of errors on this appeal the correctness of the trial court's rulings on these two issues is before us. We state below such further facts as are necessary to an understanding of each of the points raised.

▮ 1. Clause 2 of section 2 of Article IV of the Constitution of the United States provides in respect of fugitives from justice:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall, on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."
Rev.Stat. § 5278 (1875), 18 U.S.C.A. § 662 (1934), provides:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority or any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from which the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent or such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. . . ."

Conformably to the requirement of this statute the requisition papers of the governor of New York contained a purported copy of an indictment by the grand jury of the Court of General Sessions for the County of New York charging the appellant with having committed on August 31, September 5 and September 6, 1940, the crimes of selling and of possessing a narcotic drug. The copy was certified by the clerk of the court as a correct copy of the original, and the governor's requisition certified that the indictment was authentic and that it was duly authenticated in accordance with the laws of New York. It is without dispute that this form of authentication satisfied the requirements of Rev.Stat. § 5278. But it is contended by the appellant that it was not sufficient for the copy of the indictment to be "certified as authentic by the governor," but that there should also have been a certificate by a judge of the Court of General Sessions that the clerk's attestation of the indictment was in due form. There was no such judicial certificate in the requisition papers. The appellant's contention is based upon Rev.Stat. § 905 (1875), 28 U.S.C.A. § 687 (1934), which provides, so far as here pertinent:

". . . The records and judicial proceedings of the courts of any State or Territory . . . shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within

the United States as they have by law or usage in the courts of the State from which they are taken."

The contention that this statute is applicable and the requisition papers therefore defective for lack of a judicial certificate cannot be sustained. The full faith and credit clause of the Constitution (section 1 of Article IV) provides that:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws, prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

Rev.Stat. §§ 5278 and 905 were passed by Congress as general laws pursuant to the authorization of the second sentence of this clause. But it is obvious from the language alone of § 5278 that it was intended to apply to extradition proceedings, executive in character, and from the language of § 905 that its purpose was to provide for the method of authenticating records and judicial proceedings of the courts of one state or territory for the purpose of introducing them in to evidence in judicial proceedings in other courts. The duties of the chief justice of the District Court of the United States for the District of Columbia in extradition proceedings are executive, not judicial. Reed v. Colpoys, 1938, 69 App.D.C. 163, 99 F.2d 396. It is, moreover, settled by judicial authority that interstate extradition requisitions are sufficiently authenticated if they comply with the provisions of Rev. Stat. § 5278. Collins v. Traeger, 9 Cir., 1928, 27 F.2d 842; Chung Kin Tow v. Flynn, 1 Cir., 1914, 218 F. 64; Tiberg v. Warren, 9 Cir., 1911, 192 F. 458; Kingsbury's Case, 1870, 106 Mass. 223. Compare also Marbles v. Creecy, 1909, 215 U.S. 63, 30 S.Ct. 32, 54 L.Ed. 92; People of State of Illinois ex rel. McNichols v. Pease, 1907, 207 U.S. 100, 28 S.Ct. 58, 52 L.Ed. 121; Appleyard v. Massachusetts, 1906, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161, 7 Ann.Cas. 1073; Roberts v. Reilly, 1885, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544; Ex parte Reggel, 1885, 114 U.S. 642, 5 S.Ct. 1148, 29 L.Ed. 250; United States v. Meyering, 7 Cir., 1934, 75 F.2d 716. It is also expressly held that it is not necessary that extradition requisitions be authenticated in accordance with the provisions of Rev.Stat. § 905. State v. Currie, 1911, 2 Ala.App. 251, 56 So. 736; People v. Jeremiah, 1936, 364 Ill. 274, 4 N.E.2d 373; People v. Meyering, 1934, 356 Ill. 210, 190 N.E. 261; Albright v. Clinger, 1921, 290 Mo. 83, 234 S.W. 57.

2. In respect of the alleged error of the trial court in finding the appellant to be a fugitive from justice: In Barrett v. Bigger, 1927, 57 App.D.C. 81, 82, 17 F.2d 669, 670, we accepted the definition of the term fugitive from justice, as used in the Constitution and in the statutes now under discussion, given by the Supreme Court in Appleyard v. Massachusetts, supra:

". . . A person charged by indictment or by affidavit before a magistrate with the commission within a State of a crime covered by its laws, and who, after the date of the commission of such crime leaves the State—no matter for what purpose or with what motive, nor under what belief—becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another State must be delivered up by the Governor of such State to the State whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the Governor of the State from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any state. . . ." [203 U.S. at 227, 27 S.Ct. at 123, 51 L.Ed. 161, 7 Ann.Cas. 1073]

Whether or not a person is, within this definition, a fugitive from justice is a question of fact. And in a habeas corpus proceeding questioning the legality of detention for extradition the fact alone that a rendition warrant has been issued by the governor of the asylum state makes a prima facie case of fugitivity, which unless overthrown by the alleged fugitive by clear and conclusive proof, will, so far as the question of fugitivity is concerned, sustain detention. People of State of Illinois ex rel. McNichols v. Pease, supra. A mere conflict of evidence is not sufficient to warrant discharge. South Carolina v. Bailey, 1933, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292; Barrett v. Bigger, supra; Ellison v. Splain, 1919, 49 App.D.C. 99, 261 F. 247; Hayes v. Palmer, 1903, 21 App.D.C. 450.

An examination in the light of these principles of the evidence upon the question of fugitivity at the habeas corpus hearing necessitates the conclusion that there was no error in the ruling below on this subject. The appellant testified that

on the three dates—August 31, September 5 and September 6, 1940—upon which he was charged to have committed the crimes named in the indictment he was in the District of Columbia, and not at 37 Mott Street, New York, N. Y.; that he was back in the city of New York for an extended period after the dates mentioned; that he finally came to the District in March, 1941, for permanent residence. In the appellant's behalf one Sam Hoy Lee testified that he was a resident of the District of Columbia; that about August 15, 1940, he went to New York, remaining there until the 25th of the month; that while there he met the appellant and entered into a discussion with him concerning the purchase of a laundry in Washington; that he and the appellant came to Washington on August 25 where the appellant remained for nearly three weeks, when he returned to New York—his negotiations for the purchase of a laundry having terminated unsuccessfully; that he, Sam Hoy Lee, did not see the appellant again in Washington until sometime in March, 1941. But to the contrary the appellee testified that on August 31, September 5 and September 6, 1940, he saw the appellant in front of 37 Mott Street, New York City, with others in the violations of law which are the basis of the indictment. In behalf of the appellee one George F. Zegers testified that he was with the appellee on August 31, September 5 and September 6, 1940, and saw the appellant in front of 37 Mott Street, New York City. In view of the conflict of evidence thus appearing we cannot say that the trial court erred in finding the appellant a fugitive. It cannot be said that he had overthrown by clear and conclusive proof the case made against him by the issuance of the rendition warrant and by the testimony of the appellee and Zegers.

The appellant contends that the appellee's testimony should have been disregarded by the trial court for the reason that in his "Affidavit as to Flight" presented to the governor of New York as a part of the application for a requisition—which affidavit was before the court—he stated that "The reason why the fugitive was not arrested at the time of the commission of the crimes charged herein, is that while your deponent and his brother officers were engaged in arresting his accomplices, the fugitive made good his escape," whereas he testified in the habeas corpus proceeding itself that "although arrest of certain other individuals was accomplished on the last date [Sep-

tember 6, 1940] . . . no effort was made to arrest the petitioner [appellant] because of a desire to complete the investigation." The appellant insists that this constituted such a direct conflict that the appellee must have been held to have wilfully testified falsely upon an essential issue, and that therefore the maxim *falsus in uno, falsis in omnibus* should have been applied. It is not clear that the two statements of the appellee were in irreconcilable conflict. But assuming that they were, still the trial court was not required to disbelieve the testimony of the appellee so far is it concerned the presence of the appellant in New York on August 31, September 5 and September 6, 1940, for it was corroborated by that of the witness Zegers, upon whose credibility no attack was made. The maxim *falsus in uno, falsus in omnibus* does not require rejection of testimony which is corroborated by that of another and credible witness. Moreover, even if the testimony of the appellee should have been disregarded, still we cannot say, under the principles above set forth, in view of the testimony of Zegers and of the issuance of the rendition warrant, that the trial court could not properly find the appellant a fugitive; for there was still a conflict of evidence, and the trial court could properly say that the appellant had failed by clear and conclusive proof to overthrow the case made against him.

In respect of the issue of fugitivity a further point is to be mentioned: The appellant charged in his petition for the writ that in the extradition hearing itself Chief Justice Wheat determined the question of fugitivity upon the requisition papers and the testimony of the appellee alone, and that he refused to hear proffered testimony by the appellant. This charge was denied, in somewhat general and ambiguous terms, in the appellee's return and answer to the writ. But, as shown by the narrative statement, the charge was reiterated at the habeas corpus hearing and was not there denied by the appellee; and it was again made in the appellant's brief on appeal and not denied in the brief of the appellee; and it was still again made and was argued with vigor in the oral argument of the appellant in this court and again was not denied by the appellee. Since the case involves a question of personal liberty, and since it is desirable that the proprieties of procedure at extradition hearings before the chief justice of the District Court, sitting in executive capacity, should be

settled we notice the point although, for lack of a finding of fact upon the question whether the chief justice did refuse to hear the proffered testimony of the appellant, and for lack of a specific assignment of error, the point is not regularly before us. The point has been settled by the Supreme Court of the United States in Munsey v. Clough, 1905, 196 U.S. 364, 25 S.Ct. 282, 49 L.Ed. 515. In that case the governor of Massachusetts made requisition upon the governor of New Hampshire for the return of Munsey as a fugitive from justice. Before the issuance of the rendition warrant, counsel for Munsey appeared before the governor of New Hampshire and demanded a hearing. This was refused, and the warrant was issued upon the requisition papers alone. These contained (as do the papers in the instant case) an affidavit of fugitivity. A test of the legality of detention was made in a habeas corpus proceeding in the courts of New Hampshire. The determination there was against Munsey. The case then reached the Supreme Court on a writ of error. Affirming the ruling of the state courts that the detention was legal notwithstanding the refusal of hearing to the alleged fugitive, the Supreme Court said:

"The question of the legality of the detention of the plaintiff in error is thus brought before the court. The proceedings in matters of this kind before the governor are summary in their nature. The questions before the governor, under the section of the Revised Statutes [Rev.Stat. § 5278] . . . are whether the person demanded has been substantially charged with a crime, and whether he is a fugitive from justice. The first is a question of law and the latter is a question of fact, which the governor, upon whom the demand is made, must decide upon such evidence as is satisfactory to him. Strict common law evidence is not necessary. The statute does not provide for the particular kind of evidence to be produced before him, nor how it shall be authenticated, but it must at least be evidence which is satisfactory to the mind of the governor. Roberts v. Reilly, 116 U.S. 80, 95, 6 S.Ct. 291; 29 L.Ed. 544, 549. The person demanded has no constitutional right to be heard before the governor on either question, and the statute provides for none. To hold otherwise would in many cases render the constitutional provision, as well as the statute passed to carry it out, wholly useless. The governor,

therefore, committed no error in refusing a hearing. The issuing of the warrant by him, with or without a recital therein that the person demanded is a fugitive from justice, must be regarded as sufficient to justify the removal, until the presumption in favor of the legality and regularity of the warrant is overthrown by contrary proof in a legal proceeding to review the action of the governor. Roberts v. Reilly, supra; Hyatt v. [People of State of New York ex rel.] Corkran, 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657." [196 U.S. at 372, 25 S.Ct. at 283, 49 L.Ed. 515]

We find no error. The order of the District Court is

Affirmed.