**SHELTON v. UNITED STATES.**

No. 9514.

United States Court of Appeals
District of Columbia.

Argued Nov. 24, 1947.

Decided May 24, 1948.

Writ of Certiorari Denied Oct. 11, 1948.
See 69 S.Ct. 24.

666

Mr. Jay Paul Shelton, appellant, pro se.

Mr. John D. Lane, Asst. U. S. Atty., of Washington, D. C., with whom Messrs. George Morris Fay, U. S. Atty. and John P. Burke, Asst. U. S. Atty, both of Washington, D. C., were on the brief, for appellee. Mr. Sidney S. Sachs, Asst. U. S. Atty., of Washington, D. C., also entered an appearance for appellee.

Mr. John H. Burnett, of Washington, D. C., appointed by this court as amicus curiae, urged reversal.

Before EDGERTON, CLARK and PRETTYMAN, Associate Justices.

CLARK, Associate Justice.

Appellant was indicted for grand larceny and for violation of the National Motor Vehicle Theft Act.[1] He was tried in the District Court where a verdict of guilty on both counts was returned by the jury; sentence was imposed for one to five years imprisonment. This appeal followed.

Many asserted errors allegedly committed by the trial court and the prosecution are enumerated by appellant, who has prosecuted his appeal pro se. He maintains that some of the asserted errors are perhaps insignificant standing alone, but that in the aggregate they are sufficient to demonstrate that appellant was denied a fair trial.

Four days prior to the inception of the trial in this case, appellant was convicted in the same court following trial on a charge of perjury.[2] It is contended by appellant that it was error for the lower court to deny his motion for continuance in this case, and force him to trial so soon after the prior conviction, when the jury before which he was to be tried had been in the courthouse at the time the prior trial was concluded. The only motion for continuance in the record, however, did not mention possible knowledge by any juror of the recent conviction, and appellant concedes that no direct evidence of it was put before the jury in this case. The record shows that the presiding judge excused two jurors prior to the trial immediately upon disclosure that they had even slight knowledge of appellant's involvement in the prior action, and that he carefully supervised examination of the prospective jurors designed to uncover any possible partiality among them. Defense counsel announced that he was content with the jury after exercising only three peremptory challenges. From the record it seems clear that no error was committed in denying the motion for continuance, and that appellant suffered no prejudice

---

[1] 41 Stat. 324 (1919), 18 U.S.C.A. § 408.

[2] That conviction also resulted in appeal to this court, and was reversed, Shelton v. United States, 1947, 83 U.S.App. D.C. —, 165 F.2d 241.

before this jury. See Medley v. United States, 1946, 81 U.S.App.D.C. 85, 155 F.2d 857, certiorari denied, 1946, 328 U.S. 873, 66 S.Ct. 1377, 90 L.Ed. 1642.

On September 1, 1944, a used-car dealer in Baltimore, Maryland, purchased a 1941 Chrysler automobile from a person who gave the name "Arthur Robbins." Subsequently it was discovered that the automobile had been stolen in Washington, D. C., on August 25, 1944, and that the Maryland title on the car was issued upon surrender of a Virginia title which was found to have been forged.

The principal witness for the prosecution was one Carter, who sold the Chrysler automobile which appellant was charged with having stolen in Washington, D. C., and transported to Baltimore. Carter's testimony was that he went to Baltimore, then the residence of appellant, upon the latter's solicitation and request, and there received from appellant the title to this automobile and OPA gasoline ration forms necessary to effect the sale. Acting as the agent for appellant, Carter testified, he sold the automobile to the used-car dealer for $1230. This amount was paid by check to Carter, who was at the time impersonating and using the name of "Arthur Robbins." When Carter insisted on receiving cash the buyer of the car accompanied him to a Baltimore bank, where Carter endorsed the name "Arthur Robbins" on the check. Carter was thereafter tried and convicted in a Baltimore court on a charge of false pretenses arising out of this transaction.

■ In the trial of this case Carter steadfastly denied that he endorsed the check, which is directly contrary to the testimony given by the purchaser of the car. Appellant contends this and other alleged perjury on the part of Carter vitiates the whole case against him since, appellant asserts, there was no evidence other than Carter's testimony which served to link appellant to the crimes charged. The assertion is definitely untenable, on the face of the record. Further, the trial court was extremely careful in his charge to the jury to specify the caution with which Carter's testimony was to be considered, and it was proper for the jury to believe Carter's testimony in its main outlines if they chose to do so.[3] The maxim, "Falsus in uno, falsus in omnibus," as applied to witnesses, is not an inflexible rule of evidence, nor is it mandatory; the trial court need not require the jury to disregard a witness' testimony altogether even if it is proved or conceded to be false in part.[4] As Professor Wigmore has pointed out, the maxim has to do solely with the weight of the testimony, not with its admissibility. 2 Wigmore, Evidence, 2d Ed. 1923, § 1008.[5] Under our judicial system the jury alone is charged with forming a conclusion as to the truth of the testimony offered.

■ There is more than a rule of law requiring observance in connection with this contention advanced by appellant, for his own testimony corroborated that given by Carter to some extent, while other witnesses were introduced to provide further corroboration. The jury was not called upon to rely solely on the testimony given by Carter in order to find the appellant guilty as charged.

Appellant next advances an argument that it was error for the trial court to disallow proffered evidence to establish "why" he fled from custody, and to admit evidence which was seized in his New York hotel room shortly after he was recaptured. This argument necessitates a brief recitation of the background for this case.

In October of 1945 appellant was served with a warrant at Richmond, Virginia, to answer for the charges which form the basis of this case. Appellant was then in Federal custody awaiting trial on other charges. Shortly after the removal hear-

[3] Caminetti v. United States, 1917, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L. R.A.1917F, 502, Ann.Cas.1917B, 1168; Kempe v. United States, 8 Cir., 1945, 151 F.2d 680; United States v. Moran, 2 Cir., 1945, 151 F.2d 661; Albert v. United States, 6 Cir., 1922, 281 F. 511.

[4] Norfolk & W. R. v. McKenzie, 6 Cir., 1941, 116 F.2d 632. See Lee Won Sing v. Cottone, 1941, 74 App.D.C. 374, 123 F.2d 169.

[5] See Shecil v. United States, 7 Cir., 1915, 226 F. 184.

ing, which followed service of this warrant, appellant was left unattended in the office of the United States Marshal. He seized this opportunity to flee from custody, and remained a fugitive until he was recaptured by New York City policemen two and a half months later.[6] His recapture occurred as a result of his wrongful attempt to purchase two automobile registration stamping machines (such as are used by the Motor Vehicle Department of the city of New York, for official purposes), posing as an employee of the American Automobile Association. At the time he ordered these machines appellant aroused the suspicion of an employee of the stamp company, who notified the police; the police investigated and found appellant was falsely representing himself at the stamp company, and were there to apprehend and arrest him when he returned to pick up the stamping machines. Appellant did not give his true name to the arresting officers, nor did he direct them to his hotel room, which was discovered by the officers in the course of their investigation following the arrest. Their search of the room, for which appellant had registered under the same assumed name given to the officers, disclosed two forged driver's permits, bearing other names, which were admitted in evidence in the trial of this case.

Appellant contends that he should have been allowed to introduce testimony for the purpose of showing that during the period he was in custody he had ample opportunity to escape, and that he fled from custody "not because he dreaded to face this charge, but because he had been in custody seven months with no apparent progress in this case and he was simply tired of being 'juggled around.'" The Marshals who had custody of appellant prior to his escape were called as witnesses by defense counsel, whose line of ques-

tioning was obviously designed to show that appellant had ample opportunity to escape. This was effectively accomplished, and we find no substantiation in the record for the contention that the questioning was unduly restricted by the trial court.

Evidence of the flight was properly introduced, as was the evidence pertaining to the recapture of appellant. Funk v. United States, 1900, 16 App.D.C. 478; 1 Wigmore, Evidence, 2d Ed. 1923, § 276. The evidence objected to was seized by New York officers, not by Federal officers, and it is obvious at once that the Fourth Amendment, relied upon by appellant, forms no sound basis for the objection since it forms no limitation upon the powers of State or Municipal officers. Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann. Cas.1915C, 1177. But even if the search and seizure were proved to be unlawful, the evidence thus procured would nevertheless be admissible under New York law,[7] and, under the same hypothesis, is clearly admissible in the Federal court notwithstanding.[8] This evidence was relevant in connection with the proof of flight,[9] which was properly introduced even though appellant was willing to concede the fact of flight, and we find no error in its admission.

Appellant further contends that it was error for the trial court to admit evidence relating to appellant's arrest and trial for other offenses. The argument on this point is directed to statements made by the two United States Marshals, who were called as witnesses by defense counsel, which were made under direct examination, and against a statement made by the prosecuting attorney in his summation argument which referred to a "charge served in Baltimore." The statements by the Marshals were evoked by general questions

---

6 Appellant is now imprisoned under a sentence of three years for this escape.

7 People v. Richter's Jewelers, Inc., 1943, 291 N.Y. 161, 51 N.E.2d 690, 150 A.L.R. 560.

8 Feldman v. United States, 1944, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408, 154 A.L.R. 982; Burdeau v. McDowell, 1921, 256 U.S. 465, 41 S.Ct. 574, 65

L.Ed. 1048, 13 A.L.R. 1159; Wheatley v. United States, 4 Cir., 1946, 159 F.2d 599; United States v. Butler, 10 Cir., 1946, 156 F.2d 897; and see Note (Sec. V.), 134 A.L.R. 819, 827 (1941).

9 Funk v. United States, 1900, 16 App. D.C. 478; 1 Wigmore, Evidence (2d Ed. 1923) § 276.

asked by defense counsel; on the first occasion of an improper response the trial judge advised defense counsel to be more specific if he would avoid the very type of answers naturally elicited and now designated as the basis for reversal. However, we find no prejudicial error in the response made by these witnesses. The statement made by the prosecutor occurred in discussion of the testimony given by the defendant pertaining to the circumstances of his flight from custody. That testimony contained date references inapplicable to the proceedings connected with this trial. Although the statement complained of was unnecessary, we do not view it as harmful error, in view of the fact that appellant's testimony, and that elicited from other witnesses by defense counsel, had already shown that prior charges were pending against appellant.

It is next argued by appellant that it was error for the prosecutor to tell the jury that a prosecution witness, Carter, whose testimony was damaging and heavily attacked by defense counsel, had submitted to a "lie detector test." Such a reference was made by the prosecutor in his closing argument. That portion of the original transcript of proceedings in the trial court which contained this reference was contested by appellee on the ground that it had been incorrectly transcribed. By leave of this court the parties and amicus curiae appeared before the Justice who presided at the trial. As a result of that proceeding a stipulation by the parties was filed in this court April 30, 1948, whereby it was agreed that the following statement is that which was actually made by the prosecutor in his closing argument at the trial of this case:

"He has stated this, that Carter was tried by the jury in Baltimore, as to which there is no scintilla of evidence to support it. There is evidence that Carter has gone through the lie detector—the best little lie detector that there is, he sat in that chair in the District of Columbia—he has gone through the lie detector, and counsel knows that.[10]

"The Government has had an opportunity to go through that trial with a fine tooth comb, and he knows that Carter submitted to this lie detector test, and they believed Carter insofar as it concerned the taking of this automobile. They did not have to say that he had no connection; they were not entitled to pass judgment on whether he was guilty in Baltimore, that was not their function. That offense was committed here, it was not committed in Baltimore. But the lie detector shows they believed him, so far as stealing the car goes, nothing but that he is the tool of the defendant Shelton." It was further stipulated "That when Mr. Burke [the prosecuting attorney] stated 'the best little lie detector that there is, he sat in that chair in the District of Columbia,' Mr. Burke, by gesture, indicated the witness chair in the court room, from which all witnesses had theretofore testified." The stipulation was signed by counsel for the Government, by the appellant for himself, by amicus curiae, and approved by the Justice who presided at the trial.

There was no evidence that Carter had submitted to any mechanical lie detector test, but the stipulation bears out the explanation of Government counsel that this portion of the argument constituted simply an attempted metaphor. Likening appearance in a witness chair to a mechanical lie detector test is perhaps inappropriate, by subjective examination, but we find no basis for the conclusion here that the jury was misled or unduly influenced by these remarks. Furthermore, no objection was made by defense counsel at the time, which indicates that contextual placement of these remarks, and the accompanying gestures, rendered them much less objectionable than appellant would now have us believe, as we look at them in the printed record. In any event, the trial judge gave carefully worded instructions to the jury regarding the value of Carter's testimony, and we do not see that the contested statement of the prosecutor amounts to prejudicial error.

---

[10] Carter was tried in the District of Columbia on a charge of having stolen the automobile which is the subject of the larceny charge against appellant in this action; the trial of Carter resulted in acquittal.

670

Appellant properly asserts and relies upon Rule 52(b)[11] of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, as authority to raise the point last discussed, and others, although they were not brought to the attention of the trial court. We have been cognizant of that Rule, and also of Rule 52(a)[12] while reviewing the lengthy record in this case. We have given consideration to all of the assertions of error made by appellant, who has displayed exceptional ability in the presentation of his case to this court. Our resulting conclusion · is that the many assertions of error are either unsupported by the record or controlling law, or that the irregularities complained of do not constitute substantial errors prejudicing appellant's right to a fair trial.

In the trial of this case the Government relied on circumstantial evidence, which is often necessary in criminal prosecutions. Crimes are usually committed under a cloak of secrecy, by the very nature of things, and if there were an absolute requirement of direct testimony to sustain a conviction the inevitable consequence to society would be disorder, by reason of inadequate protection against the criminals who are always in our midst. The record before us displays a chain of events, to which appellant has been connected by competent testimony, which leads directly to the guilt of the accused. In our view appellant received a fair trial, and we find a substantial basis for the verdict returned by the jury.

In passing we desire to express our gratitude to amicus curiae, Mr. John H. Burnett, who has ably assisted appellant in the prosecution of this appeal and provided much beneficial assistance to the court.

After considering all of the questions presented for our determination, and finding no prejudicial error in the trial proceedings, it is our opinion that the judgment must be affirmed.

Affirmed.

---

[11] *"Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

---

[12] *"Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."