GICINTO v. UNITED STATES.
No. 14898.

United States Court of Appeals
Eighth Circuit.

April 15, 1954.

Rehearing Denied May 4, 1954.

See also 114 F.Supp. 929.

Walter A. Raymond, Kansas City, Mo. (Homer A. Cope and Donald W. Browne, Kansas City, Mo., were with him on the brief), for appellant.

William O. Russell, Asst. U. S. Atty., Joplin, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., was with him on the brief), for appellee.

Before SANBORN, WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

Charles Vincent Gicinto was indicted, tried and convicted upon an indictment in three counts, and the court sentenced him to serve ten years in prison on each count, the sentences on each count to be served concurrently; and he appeals.

Each count of the indictment charged that on or about August 24, 1952, at Kansas City, Missouri, the appellant with intent to defraud did pass, utter and publish a falsely made and counterfeited security of the United States, namely a twenty dollar Federal Reserve note. 18 U.S.C.A. § 472.

There is no claim that the verdict of the jury is not supported by the evidence. Appellant's contention is that he was not given a fair trial in that the court erred for

I. Failure to declare a mistrial because of a newspaper article.

II. Admission in evidence of a passport issued to the defendant and received by him on August 23, 1952.

III. Errors in the court's charge for—

1. Failure to charge that the jury must find that the defendant knew that the notes were counterfeit;

2. Failure to charge that the weight of the evidence is not determined by the number of witnesses or the quantity of evidence;

3. Failure to mention defendant's explanation of the passport;

4. Failure to give converse instruction on facts hypothesized for conviction; and

5. Singling out defendant as witness and commenting on credibility.

Appellant's first contention is that the court erred in overruling his motion made at the close of the government's case to discharge the jury.

The trial commenced on the morning of July 2, 1953, and the government concluded its evidence on that day. That evening an article appeared in the Kansas City Star about the trial in which it was stated that:

"Another indictment charging Gicinto with passing counterfeit money has been returned by a federal grand jury in Denver.

"Earlier this year, Gicinto was found not guilty by a Johnson County district court jury at Olathe [Kansas] of charges of burglary and armed robbery in a holdup last October at the home of Mr. and Mrs. Herbert O. Peet, Eighty-third Street and Nall Avenue."

When court convened on the morning of July 3d counsel for defendant moved "for a discharge of the jury based upon two things. First * * *" the article referred to in the Star.

Referring to the published article counsel said: "I do not know personally whether they [the jurors] read such article or not * * * I desire to introduce a witness * * *."

Counsel for defendant read into the record the part of the article set out above, whereupon Richard Van Ness, who had been a character witness for defendant, testified that as he got on the elevator in the Federal Courts Building where the trial was being held, about 9:30 that morning, the car was crowded; that he was the last on, so he was facing the door and could not see the persons behind him, but he heard a man say: "They want this guy in Denver when we get through with him here on the same charge." He could not see the man who spoke, but when they got off the elevator he recognized three members of the jury who were on the elevator when the statement was made. He knew they were members of the jury because the man who spoke said "When we get through with this guy they want him in Denver."

It will be noted that counsel for defendant did not ask that the jury be polled or interrogated in regard to the article, and there is no evidence that it was read by the jurors or that any of them were influenced in any way by it. The appellant relies upon Marson v. United States, 6 Cir., 203 F.2d 904, but the facts in that case are different and it is not in point here. Even if the jurors read the article referred to, that alone is not ground for a new trial. Bratcher v. United States, 4 Cir., 149 F.2d 742; United States v. Katz, 3 Cir., 173 F.2d 116. The burden was upon

counsel for defendant to show that prejudice resulted, and he failed to establish such prejudice. Further, this court cannot take notice of a newspaper article which was not put in evidence. Schino v. United States, 9 Cir., 209 F.2d 67, 70; United States v. Moran, 2 Cir., 194 F.2d 623, 625; Stunz v. United States, 8 Cir., 27 F.2d 575.

■ Appellant next contends that the court erred in admitting in evidence over his objections the passport issued to him on August 23, 1952. Application was made for it on August 11, 1952. The very day that he received the passport the evidence shows that he passed one of the counterfeit notes to Robert A. Schroeder, and he passed two others the next day. "Generally, evidence of the conduct of accused shortly before the offense which is inconsistent with his innocence is relevant and admissible." 22 C.J.S., Criminal Law, § 606. And evidence of flight is always admissible, especially when the conduct of the defendant is apparently inconsistent with innocence. Strom v. United States, 9 Cir., 50 F.2d 547; Shelton v. United States, 83 U.S.App.D.C. 257, 169 F.2d 665. And see Merrill v. United States, 5 Cir., 40 F.2d 315. The evidence complained of was admissible although it was not conclusive. And the fact that it may have been prejudicial does not render it inadmissible since it was relevant. Luteran v. United States, 8 Cir., 93 F.2d 395. And see Rice v. United States, 10 Cir., 149 F.2d 601.

Finally, appellant complains of the court's charge to the jury, contending that the instructions are erroneous for failure to include in the charge the five different propositions stated above.

The situation presented is unusual in that counsel for defendant requested no instructions and took no exceptions to the instructions given. No complaint was made at the time regarding the instructions given. No complaint regarding the instructions appears in the record until after the jury had returned a verdict of guilty on all three counts of the indictment. At the conclusion of the instructions the court, speaking to counsel, said: "Now, have I said anything that I * * *." Counsel for defendant: "Perfectly all right, Your Honor."

Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. provides: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

And Rule 52(b) thereof provides: "(b) Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

The question for determination is, therefore, whether any of the alleged omissions in the instructions to the jury constitute "plain errors or defects affecting substantial rights" of the appellant.

■ Having read the instructions given by the court, we are of the opinion that no reversible error of this kind occurred. The first complaint is that the court failed to require the jury to find that the defendant knew the $20 bills or notes passed by him were counterfeit. The statute under which the indictment was brought, 18 U.S.C.A. § 472, provides that "Whoever, with intent to defraud, passes * * * any * * * counterfeited * * * obligation * * * of the United States, shall be" punished as prescribed. In his instructions to the jury the court charged that " * * * if you find * * * from the evidence that the defendant * * * passed a $20.00 Federal Reserve note which was counterfeit * * * with the intent to defraud, then * * * it would be your duty to return a verdict of guilty." Clearly, unless the jury should find that the defendant knew the bill or note was counterfeit he could not intend to defraud. The cases cited in appellant's brief do not hold to the contrary.

■ It will be noted further that appellant neither requested any instructions nor took exception to the instruc-

tions given. It is the long-established rule in the federal courts that "Failure to give instructions is not reversible, as matter of right, in absence of proper request or exception." See Stassi v. United States, 8 Cir., 50 F.2d 526, where the principal is discussed at great length and numerous authorities are cited. See, also, McCall v. United States, 89 U.S. App.D.C. 153, 191 F.2d 470; Steers v. United States, 6 Cir., 192 F. 1.

The judgment appealed from is

Affirmed.

WOODROUGH, Circuit Judge (dissenting).

It was shown beyond dispute in this case that three counterfeit twenty dollar bills of a certain type were passed in payment for gasoline at each of three filling stations in Kansas City in each instance by a man who remained sitting in a car while the employee at each station delivered the gas into the car tank. The only evidence that the defendant was the man who passed the counterfeits was the identification of him by the three filling station employees, each of whom took in one of the counterfeits. Neither of said employees ever had any acquaintance with defendant nor had either of them previously ever seen or had any contacts with him. Nor had either of them made a spontaneous identification of defendant upon subsequently meeting him in ordinary course. They had been taken in a body long after the occurrence to another town by officers and there picked defendant out of a line up of prisoners arranged by the officers. Their identification was solely upon comparison of the looks of defendant with such recollection as each witness had of the looks of the man who uttered the counterfeit to him. The defendant testified he was not at either of the filling stations at the specified times and that he had not uttered or had anything to do with the counterfeits. Kansas City business men of standing testified to his good reputation.

I do not doubt that there was a jury question whether or not defendant was the man who uttered the counterfeits

and, of course, the jury had the exclusive power to decide that question against the defendant solely on such identification as was made of him. Every man is subject to and must endure the risk of becoming another victim of mistaken identity at the hands of a jury. Judges cannot change that.

But where, as in this case, the government has no evidence except such identification to connect a defendant with an uttering of counterfeit the record of conviction must show that it was the identification that satisfied the jury. Here the jury had no instruction to limit their inquiry to the question of identification although it presented the only real issue and I think there was error in the failure of the court to exclude inadmissible matter from their consideration.

I first observe in the record that the prosecutor argued to the jury in his closing, to which there could be no reply, as follows:

"You know the old saying that criminals return to the scene of the crime and there is testimony here that is what happened again * * * before the subpoenas were out * * * Mr. Gicinto and three of his friends were out there [to the oil stations] * * *. There is no way he could find out where those witnesses were unless he had guilty knowledge because there were no addresses out on the witnesses."

This statement of the prosecutor went to the heart of the case. It supplied an addition to the identification that would justify a juror in feeling certain that defendant was guilty. If it was true that in addition to the identification defendant showed guilty knowledge of the circumstances of the uttering he should have been convicted. But we are assured it was not true. The prosecutor was mistaken. The evidence was that defendant had gone out to the government's identifying witness Schroeder to test (as he says) whether Schroeder could really recognize him. But at that time the government had furnished the defense the names of the witnesses. Defendant's go-

ing out there did not reflect guilty knowledge. The transcript here shows that defense counsel interrupted the prosecutor's statement that defendant showed guilty knowledge by saying it was incorrect and producing and indicating the list of the names of the witnesses. The transcript reads:

"Mr. Cope [counsel for defendant]: There is the names of your witnesses (indicating).

"[The prosecutor]: I have seen it.

"Mr. Cope: Well, look at it.

"Thereupon the court charged the jury:".

Thus the jury carried the prosecutor's statement with them to the jury room. He let it stand uncorrected and it was unfairly prejudicial.

It also seems to me that there was prejudicial error in permitting the issue concerning identification to be confused with evidence that a passport to travel in foreign countries had been issued to the defendant. A search of defendant's home and person failed to produce anything related to counterfeits but the passport having been seized in the search was put in evidence over objection and the prosecutor argued to the jury, "Now this little deal here, the passport. I am very thankful to the good judge this was allowed to be introduced * * * that passport was a continuation of his method of escape * * *. The date on that passport (August 23rd, the day before the uttering) fits in just perfectly. Everything is all lined up. If there is any trouble passing these bills he has got a passport. That is not just a ticket out of the county. That is not a ticket out of the state. That is a ticket out of the territorial limits of the United States. As you know there is no place further

than sixty hours I think by air. So just a matter of hours."

It is obvious that defendant's possession of a passport did not have the slightest tendency to throw light on the issue whether he was the man who passed the counterfeits in this case. But the foregoing as well as the prosecutor's statement that defendant had demonstrated guilty knowledge tended to assure the jury that there was more against defendant than the identification and was unfairly prejudicial to defendant.

Furthermore I am unable to assume that the newspaper article about the defendant which was being distributed in the lobby of the court house building where the case was being tried and was being talked about in the elevator carrying jurors up to the court room had nothing to do with the verdict. The article contained exactly the kind of addition to the identifications that would overcome a juror's hesitation to act in the face of the well understood likelihood of mistaken identity. It does not seem credible to me that all of the jurors remained oblivious of the conspicuous lengthy item in their only daily paper about the particular matter they were all directly concerned with for days.

An outstanding lawyer in the civil practice was appointed to defend in this case on account of the defendant's indigence and he undoubtedly did his best. He says he found himself out of place in the trial of this criminal case. But regardless of whether he properly made and preserved all the points he should have, the record on its face raises doubt in my mind that the competent evidence alone, to wit: the identifications, convinced the jury that defendant was the man who passed the counterfeit. There seems to me too much reason to conclude that improper matter contributed. I would award a new trial.