**MEDLEY v. UNITED STATES.**

**No. 9057.**

United States Court of Appeals
District of Columbia.

Argued March 25, 1946.

Decided April 17, 1946.

Writ of Certiorari Denied June 10, 1946.
See 66 S.Ct. 1377.

Mr. James K. Hughes, of Washington, D. C., for appellant. Mr. Oliver Wendell Holmes Hughes, of Washington, D. C., also entered an appearance for appellant.

Mr. Daniel B. Haher, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, John W. Fihelly and Sidney S. Sachs, Assistant United States Attorneys, all of Washington, D. C., were on the brief for appellee. Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee. ·

Before GRONER, Chief Justice, and WILBUR K. MILLER and PRETTY-MAN, Associate Justices.

GRONER, C. J.

Appellant was indicted in the District Court at the January Term, 1945, for the murder of one Nancy Boyer while perpetrating robbery.[1] He was convicted in June, 1945, and sentenced to be electrocuted. He has appealed and has assigned twenty-one grounds of error. These are summarized by his counsel under five headings—

1. The order overruling defendant's plea in abatement.

2. Prejudicial newspaper comments, improper admission of testimony, improper comment by witnesses and Government counsel, and the display throughout the trial of the bloody clothing of the deceased.

3. Improper admission of expert testimony.

4. Permitting counsel to read the court's instructions and failure of the court *personally* to charge the jury.

5. That the verdict was contrary to the evidence.

We shall consider these points in the order in which we have stated them.

*First*: The record shows that appellant pleaded to the indictment March 29, 1945, the day on which it was returned in open court. The proceedings in that respect were not stenographically recorded, but counsel inform us, and the statement is not challenged, that appellant requested that the arraignment be postponed for two weeks. The Government objected and the court ruled that the defendant must plead at once. Thereupon the defendant pleaded not guilty, with leave of the court to withdraw the plea and demur to or move to quash the indictment, or otherwise plead within two weeks. The time was subsequently extended by agreement of counsel, with the consent of the court. On April 20th, twenty-two days after the arraignment, but within the time limit agreed upon, appellant filed a plea in abatement. This alleged that the Grand Jury was not selected in accordance with local statutory requirements.[2]

The court rejected the plea on the ground it was filed too late. This, we think, was correct. It is provided by statute[3] that "No plea to abate nor motion to quash any indictment upon the ground of irregularity in the drawing or impaneling of the grand jury or upon the ground of disqualification of a grand juror shall be sustained or granted unless such plea or motion shall have been filed before, or within ten days after, the defendant filing such plea

---

[1] D.C.Code (1940, ed.), § 22—2401 provides: "Whoever, being of sound memory and discretion, kills another purposely, * * * or in perpetrating or attempting to perpetrate any offense punishable by imprisonment in the penitentiary, or without purpose so to do kills another in perpetrating or in attempting to perpetrate * * * robbery * * * is guilty of murder in the first degree."

[2] D.C.Code (1940 ed.), § 11—1402, § 11—1403, § 11—1411.

[3] U.S.C.A., Title 18, § 556a.

* * * is presented for arraignment; * * *." This language is clear and unequivocal and was obviously intended to place a fixed time limit where previously an element of discretion had in some measure obtained.

It is argued here, however, that the order granting leave to defendant to withdraw his plea of not guilty within two weeks operated to toll the statutory period and to permit the defendant, within the additional time, to avail himself of the right to the same extent as if the plea had been filed within the statutory period. But we think the argument invalid. The statute, with a well recognized purpose in view, prescribes a definite time limit after which the right, if not availed of, is lost. Hence it is not within the power of a court to extend the time, nor may it be done by agreement of counsel. The precise question, so far as we are advised, first arose in the case of United States, ex rel. McCann, v. Thompson, Warden, 2 Cir., 144 F.2d 604, 156 A.L.R. 240, certiorari denied, 323 U.S. 790, 65 S.Ct. 313. There it was said that the statute does not permit the right to be reserved, by any means, beyond the time limit prescribed. Prior to the enactment of the statute the rule was firmly established that a defendant must take the first opportunity in his power to make the objection, and under that rule a plea filed five days after arraignment was held to be too late, Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 239, 41 L.Ed. 624.

█ Moreover, it is well established that such pleas must be pleaded with exactness and in the Agnew case (supra) it was held that a plea to abate "is fatally defective in that, although it is stated that the drawing [of the Grand Jury] 'tended to his [defendant's] injury and prejudice,' " fails to set out the particular respect or respects in which the irregularity resulted in prejudice. Here, nothing is shown or alleged to the damage or hurt of defendant, and without it the allegation of mere irregularity in drawing or impaneling the Grand Jury is not enough. See also United States v. Parker, 103 F.2d 857, certiorari denied Parker v. United States, 307 U.S. 642, 59 S.Ct. 1044, 83 L.Ed. 1522.

█ *Second*: Much is made of local newspaper articles appearing after appellant's arrest and before trial regarding appellant's alleged criminal activity prior to the slaying of Mrs. Boyer. It is enough to say as to this that the court in the examination of prospective jurors was careful to exclude all who admitted any bias as the result of having seen or read the newspaper stories. After careful examination, the court accepted only those who declared on their oaths that they could and would give appellant a fair and impartial trial.

█ The assignment also alleges error in the admission of evidence of other crimes and specifically that the jury were permitted to know that appellant at various times had registered at different hotels under different names, that he was known at times to be armed, that he had represented himself to one or more witnesses as a former Army officer, and that shortly before the murder he had induced his victim to cash a bad check. The latter item stems from the testimony of a witness that the bank on which the check was drawn had no "checking department." This may or may not have been true, but in any event it was irrelevant and should not have been allowed. But the trial judge cured whatever error might have arisen when he expressly warned the jury not to consider the testimony and not to allow it to influence them in any way in their deliberations on the facts. A careful review of the record shows unmistakably that in the other instances the evidence was directly responsive to the charge in the indictment and a necessary and proper part of the case on trial. The assignment under this same heading of prejudice to defendant through the exhibition of the bloodstained clothing is without merit. The various articles were identified as the clothing worn by deceased at the time of her death and their use by the Government attorney was in corroboration of medical testimony as to the manner of death; nor does the record support appellant's allegation that the clothing was kept constantly before the jury during the trial.

█ *Third*: When appellant was arrested in St. Louis, to which place he had

fled after the slaying, a revolver and several bullets were found in his possession. In an effort to prove that the bullets taken from the body of Mrs. Boyer were fired by appellant, the Government introduced proof that the noses of the bullets found in appellant's possession had been scraped in a similar fashion to those that caused Mrs. Boyer's death. This was followed by expert testimony that a finger nail file found in appellant's possession when arrested contained particles of the metal of a cartridge. The expert called for this purpose explained that the nature of the metal on the file was determined by a method known as "Spectroscopy." The objection is that this branch of science is so little known as to lack the degree of certainty justifying its use as evidence in a criminal case. But this position cannot be sustained, for it is easily demonstrable that it is now in general use in scientific research and industrial analysis.[4] There is nothing in the testimony which in any respect conflicts with the rule applied by us in Frye v. United States, 54 App.D.C. 46, 293 F. 1013, 34 A.L.R. 145.

■ *Fourth*: At the conclusion of all the testimony the court received the prayers offered by the Government and by the accused, and accepted some and rejected others. No point is made that errors occurred in either respect. The ground of error urged under this assignment is that instead of personally reading the instructions to the jury, the Judge permitted counsel to read them. No objection to this method was offered by appellant's counsel, and indeed, it appears that counsel for appellant participated in reading the instructions. Nevertheless, we think the practice undesirable and have said so several times in the last few years. But we have also said that where it appears that the instructions, after approval by the court, were actually read and the jury distinctly told that as read they embraced all the applicable law as determined by the court, and the jury were made to understand that in reading the instructions counsel acted solely as the mouthpiece of the judge,—all of which sufficiently appears here—the refusal of the judge personally to read them to the jury was not error justifying a new trial.[5] Fortunately, Rule 30 of the new Criminal Rules will obviate the necessity of our saying more on this subject in future appeals in criminal cases.

■ *Fifth*: Appellant was shown by evidence of the most satisfactory character to have brutally slain Nancy Boyer on March 6, 1945. It is true the evidence was entirely circumstantial, for the crime was committed in her apartment in Washington City with no one present but herself and her assailant. But the circumstantial facts point unerringly to appellant as the murderer, and no reasonable person could have reached any other conclusion than was reflected in the jury's verdict.

Affirmed.

---

[4] See: Lewis, Judd, Spectroscopy in Science and Industry (London, 1936); Spectroscopy in Science and Industry, Proceedings of the Fifth Summer Conference on Spectroscopy and Its Applications (New York, 1938).

[5] Mumforde v. United States, 76 U.S. App.D.C. 107, 130 F.2d 411; Copeland v. United States, 80 U.S.App.D.C. 308, 152 F.2d 769.