## EMSPAK v. UNITED STATES.

### No. 10943.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 5, 1951.

Reargued May 27, 1952.

Decided Dec. 19, 1952.

Petition for Rehearing Denied April 13, 1953.

See, also, 95 F.Supp. 1012.

David Scribner, New York City, pro hac vice, by special leave of court, with whom Allan Rosenberg, Washington, D. C., was on the brief, for appellant.

Charles B. Murray, Asst. U. S. Atty., Washington, D. C., at the time of argument, with whom George Morris Fay, U. S. Atty., Washington, D. C., at the time the brief was filed, was on the brief, for appellee. Charles M. Irelan, U. S. Atty., Washington, D. C., at the time of argument, and Joseph M. Howard, Asst U. S. Atty., Washington, D. C., also entered appearances on behalf of appellee.

Before STEPHENS, Chief Judge, and EDGERTON, CLARK, WILBUR K. MILLER, PRETTYMAN, PROCTOR, BAZELON, FAHY, and WASHINGTON, Circuit Judges.

CLARK, Circuit Judge.

This appeal was first heard by a division of this court but subsequently, before a decision and opinion had been announced, the court, *sua sponte*, ordered rehearing *in banc*. Appellant was indicted by a grand jury, tried without jury, and convicted of violating Section 192, Title 2 U.S.C.A.[1]

---

1. The statute reads as follows: "Every person who having been summoned as a witness by the authority of either House of Congress to give testimony or to produce papers upon any matter under inquiry before either House, or any joint committee established by a joint or concurrent resolution of the two Houses of Congress, or any committee of either House of Congress, willfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable by

He was sentenced to imprisonment for a period of six months and to pay a fine of $500. This appeal follows.

In response to subpoena, appellant appeared before a one-man subcommittee of the Committee on Un-American Activities of the House of Representatives. The committee was investigating the general subject of infiltration of Communism into labor unions. During the course of the hearing, appellant was asked approximately two hundred thirty-nine questions, most of which he answered, but there were sixty-eight questions which he refused to answer. Appellant contends that at the time of his refusal to answer those questions, he asserted the privilege against self-incrimination under the Fifth Amendment. In addition, he advances certain other arguments which we will consider before addressing ourselves to an examination of the remarks and events which took place at the hearing.

One argument advanced by appellant is that the lower court erred in denying a hearing on appellant's motion challenging validity of the grand jury which indicted him. The affidavits which he submitted to support his motion for hearing had as their sole basis the argument that government employees on the grand jury were incapable of reaching an unbiased decision, and they did no more than assert existence of a "miasma of fear" so clearly rejected in the Dennis case. Without more, there was no ground upon which an order for hearing might be founded, and there was no error in the denial thereof. The Supreme Court has held that the mere fact of government employment does not result in an implication of bias on the part of a juror, and does not disqualify an individual from jury service. United States v. Wood, 1936, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78; Frazier v. United States, 1948, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187; Dennis v. United States, 1949, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734.

As for appellant's contention that the prosecution failed to prove a material ingredient of the offense—a valid subcommittee—there is no justification whatsoever. The validity of the House Committee on Un-American Activities has been the subject of exhaustive examination and certainly by now conclusive determination. See U. S. v. Josephson, 2 Cir., 1947, 165 F.2d 82, certiorari denied 1948, 333 U.S. 838, 68 S.Ct. 609, 92 L.Ed. 1122; Barsky v. United States, 83 U.S.App.D.C. 127, 167 F.2d 241, certiorari denied 1948, 334 U.S. 843, 68 S.Ct. 1511, 92 L.Ed. 1767; Eisler v. United States, 1948, 83 U.S.App.D.C. 315, 170 F.2d 273; Dennis v. United States, 1948, 84 U.S.App.D.C. 31, 171 F.2d 986, affirmed 1950, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734. The committee is authorized as a whole or by subcommittee to make investigations. Act Aug. 2, 1946, 60 Stat. 812, 828. Appellant appeared before the subcommittee in response to subpoena and the record discloses that on the call to order the chairman identified the subcommittee and recited the authority under which it was constituted. Appellant was present, accompanied by counsel. He heard the announcements of the chairman, and he made no objection to the chairman's sitting as a subcommittee of one. Not only is it clear from the record that the subcommittee was valid, the appellant may not now advance an objection to it. In the Bryan case the Supreme Court was called upon to consider the failure of a recalcitrant witness to express at time of hearing any objection to the composition of the committee, and in its opinion the Court said: "To deny the Committee the opportunity to consider the objection or remedy it is in itself a contempt of its authority and an obstruction of its processes." United States v. Bryan, 1950, 339 U.S. 323, 333, 70 S.Ct. 724, 731, 94 L.Ed. 884.

In his brief and in oral argument on appeal, appellant sought to remove himself from the operation of the statute by

a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months. As amended June 22, 1938, c. 594, 52 Stat. 942."

claiming that there could have been no contempt until after a question had been asked by the subcommittee, reply had been refused, and thereafter specific direction that the question be answered, with still another refusal. In other words, he argued that failure to answer the questions of the Congressional subcommittee was not of itself contempt, but rather that contempt would arise from refusal to comply with a specific Congressional order to answer. We cannot agree with appellant's proposition that there is an analogy between a committee of Congress and a grand jury. The grand jury is an appendage of the court, 24 Am.Jur., Grand Jury, § 2, dependent upon the court to punish contumacious witnesses, whereas the contempt power of Congress is implied to both Houses from the inherent nature of the Congress, and "Congress was only implementing a conceded power when it enacted the statute providing punishment for contempt of [its] committees." See Fields v. United States, 1947, 82 U.S.App. D.C. 354, 356–357, 164 F.2d 97, 99–100, certiorari denied 1948, 332 U.S. 851, 68 S.Ct. 355, 92 L.Ed. 421. Any crime of contempt was complete when appellant refused to answer questions propounded by the subcommittee. United States ex rel. Cunningham v. Mathues, 3 Cir., 1930, 50 F.2d 411.

■ The Supreme Court has said that "The offense of contempt of Congress * * * matures only when the witness is called to appear before the committee to answer questions or produce documents and wilfully fails to do so." See United States v. Bryan, supra, 339 U.S. at page 341, 70 S.Ct. at page 735. But that does not mean that the witness appears before a committee of the Congress deprived of his legal rights or shorn of his constitutional privileges. A person summoned to appear before a Congressional committee may refuse to answer questions and submit to a court the correctness of his judgment in doing so, but a mistake of law is no defense, for he is bound rightly to construe the statute involved. Townsend v. United States, 68 U.S.App.D.C. 223, 95 F.2d 352,

certiorari denied 1938, 303 U.S. 664, 58 S.Ct. 830, 82 L.Ed. 1121.

■ This brings us to the primary argument advanced by appellant in this appeal. He has argued that at the time of his refusal to answer the questions of the subcommittee he asserted the privilege against self-incrimination under the Fifth Amendment.

The record discloses that appellant is an experienced, intelligent, and articulate individual who holds high executive position in a large labor union and who also serves as editor of the union's official publication. He was accompanied at the hearing by able and experienced counsel. His testimony shows him to be a man of strong opinions and clear and vigorous expression. These elements leave no doubt of his ability to say what he might mean, and, conversely, to mean what he might say.

At the start of the hearing, appellant answered questions concerning the union and its organization, officials, and functions. He also answered later questions concerning access of union officers to defense plants. But when asked to identify certain persons, he lashed out at the committee, condemning its conduct in the past, and impugning its motives. Rather than draw about him the protecting mantle of the Fifth Amendment, in his sole reference to the Constitution the appellant stated: "Because of the hysteria, I think it is my duty to endeavor to protect the rights guaranteed under the Constitution, primarily the First Amendment, supplemented by the Fifth. This committee will corrupt those rights." Later, on being asked if he felt answers to certain questions would subject him to criminal prosecution, he not only replied in the negative, but he also added: "I don't think this committee has a right to pry into my associations. That is my position."

This court is well aware that the provisions of the Fifth Amendment must be accorded liberal construction in favor of the right it was intended to secure. Hoffman v. United States, 1951, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118, and

cases there cited. We are also aware that no magic formula of words must be precisely recited, as though a talisman, to assure the protection which the Amendment was intended to provide. However, there is no analogy between this situation and the circumstances involved in the Hoffman case, for in that case it was stipulated that the petitioner had declined to answer on the ground that his answers might tend to incriminate him of a federal offense, whereas the very question to be decided here is whether or not appellant adequately invoked the privilege. We find that he did not.

Affirmed.

PRETTYMAN, Circuit Judge, with whom STEPHENS, Chief Judge, and WASHINGTON, Circuit Judge, concur, concurring.

The rule invoked by appellant in respect to the grand jury, as stated by him in his brief, is: "It is now settled that Government employees serving as Grand or Petit Jurors will be barred as a group for bias when circumstances are brought to the court's attention demonstrating that Government employees would not be suitable jurors in a particular case. Dennis v. United States, 339 U.S. 162 [70 S.Ct. 519, 94 L.Ed. 734]." His reference to the Dennis case is actually a reference to the language used by Mr. Justice Reed in his concurring opinion. We assume for present purposes that the concurring opinion is an accurate summation of the opinion of the Court. Under the rule as thus stated the question before us is whether circumstances were brought to the trial court's attention which demonstrated that Government employees would not be suitable grand jurors in the particular case.

This case rests upon an indictment which charges that the appellant refused to answer sixty-eight questions asked him by, or on behalf of, a subcommittee of a committee of the House of Representatives. Fifty-eight of those questions were whether appellant knew certain named persons and whether those persons were officials or representatives of a named labor organiza-

tion; two were whether appellant had been affiliated with the National Federation for Constitutional Liberties and the Civil Rights Congress; and the remaining eight were whether the defendant had attended meetings of, was a member of, had paid dues to, etc., the Communist Party. Appellant's motion to dismiss the indictment and for other appropriate relief was upon twelve grounds, one of which related to the grand jury and was as follows:

"10. The indictment is void and illegal in that there are less than 12 members of the Grand Jury which voted the indictment who were impartial and free from prejudice or bias against the defendant, and therefore as to this defendant the alleged Grand Jury was illegally constituted. The indictment should be dismissed or in the alternative the defendant should be granted a hearing at which he can offer proof that bias or prejudice existed on the part of more than 11 of the Grand Jurors."

Attached to the motion was an affidavit of appellant, in which he said that with respect to the questions referred to in the indictment he asserted his constitutional privilege against self-incrimination as well as his rights under the First Amendment. Also attached to the motion were two affidavits of counsel for the appellant, to the second of which eight exhibits were attached, which affidavits and exhibits were alleged to show that due to the Loyalty Order and investigations being made pursuant thereto "a miasma of fear" had developed among Government employees in the District of Columbia which caused such employees to come reasonably to the conclusion that any action by them which could be considered sympathetic toward a person accused of an offense arising out of an investigation of Communist activities would endanger their Government employment.

Thus the circumstances brought to the court's attention included the fact that appellant was charged before the grand jury and in the indictment with refusing to answer questions, and the fact that he in

effect admitted that he had refused to answer the questions but asserted as a defense a legal justification for the refusal. Our legal procedure does not include provision for the presentation to a grand jury of matters of defense or justification. The problem before the trial court upon the motion to dismiss the indictment or for a hearing, therefore, did not present the question whether Government employees were suitable jurors to consider the validity of the claim to the privilege. The question was whether Government employees were suitable grand jurors to consider the charge that appellant had refused to answer certain questions. In respect to that charge the court was advised by the affidavit attached to the motion that the appellant had refused to answer the questions. Therefore the problem before the court was whether under these particular circumstances a general atmosphere of fear on the part of Government employees made them unsuitable grand jurors in respect to such charge in the light of statements made by appellant in the motion.

The ruling of the trial court was:

"(4) In the absence of a showing of actual bias on the part of the members of the Grand Jury due to their employment in the Government of the United States or the Government of the District of Columbia, the indictment is not void. United States v. Wood, (1936) 299 U.S. 123 [57 S.Ct. 177, 81 L.Ed. 78]; Frazier v. United States, (1948) 335 U.S. 497 [69 S.Ct. 201, 93 L.Ed. 187]; Dennis v. United States, (1950) 339 U.S. 162 [70 S.Ct. 519, 94 L.Ed. 734]. In a particular case Government employees serving as Grand or Petit Jurors might be barred for implied bias when circumstances are properly brought to the Court's attention which convince the Court that Government employees would not be suitable jurors. No such circumstances are present under the force of the present motion to dismiss, nor were any such circumstances indicated in defendant's proffer of proof in support of the motion for a hearing on the qualifications of the Grand Jurors."

We think that ruling was correct. We are here dealing with a grand jury, not a petit jury. No question was presented as to the constitution of the grand jury as such, or as to its ability to act upon other cases. No claim was made that any grand juror was biased against this appellant personally. We think that under the circumstances presented to the court there was no indication that Government employees would not be suitable grand jurors in respect of the charge which was before them in this particular case. The question before the court was limited to the suitability of this grand jury to act in this particular case. Other cases and other circumstances might present other problems.

We assume for the purposes of this opinion that an accused is entitled to an impartial grand jury, taking "impartiality" in this context to mean absence of bias in respect to the accused as a person and absence of bias in respect of the particular matter at hand. To state an exaggerated example: We suppose no one would contend that Government employees are unsuitable grand jurors in respect to a charge of armed robbery, even if the accused happened to be a Communist.

We repeat for emphasis that among the circumstances brought to the court's attention upon the motion were (1) the fact that the charge before the grand jury was that appellant refused to answer certain questions and (2) the fact that appellant said that he had refused to answer those questions. Helpful, although not decisive, is the rule long ago stated by the Supreme Court, that "for such irregularities as do not prejudice the defendant he has no cause of complaint, and can take no exception."[1] This grand jury was not called

1. Agnew v. United States, 1897, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624. See also Medley v. United States, 1946, 81 U.S. App.D.C. 85, 155 F.2d 857, certiorari denied, 1946, 328 U.S. 873, 90 L.Ed. 1642, 66 S.Ct. 1377; Romney v. United States, 1948, 83 U.S.App.D.C. 150, 167 F.2d 521, certiorari denied, 1948, 334 U.S. 847, 68 S.Ct. 1512, 92 L.Ed. 1771.

upon to evaluate the probabilities of a doubtful *prima facie* case or of a charge in a realm of opinion or controversy. And the court knew when it considered the motion that the appellant did not deny the basic fact of refusal but advanced a defense of justification. The function of the grand jury is merely to determine whether the evidence before it, if unexplained, would justify a verdict of guilty. This grand jury did no more than to say in effect that appellant should be put to his defense. No circumstance was brought to the court's attention which demonstrated that this grand jury was unsuitable to take that action.

In respect to the applicable requirements upon a witness's refusal to answer a question, we add one further observation in view of the decision and opinion in Quinn v. United States, 91 U.S.App.D.C. 344, 203 F.2d 20, decided today. We there remand; we here affirm. But we remand there because the trial court erroneously, we think, held specifically that the defense offered by Quinn was not available to him as a matter of law. Reversal upon that ruling required a new trial. We made further observations designed to be helpful upon the trial thus required. In the present case there was no corresponding ruling of law. There was a general judgment of guilty by the judge without a jury. Our review upon the point is limited to a determination whether the record contains sufficient evidence to support a finding that Emspak deliberately and intentionally refused to answer and thus to support that judgment. We find that it does. The evidence is ample that Emspak was made well aware that the Subcommittee desired answers to its questions despite the grounds he advanced for refusing. Hence we affirm. The point is discussed a

little more at length in Bart v. United States, 91 U.S.App.D.C. 370, 203 F.2d 45, also decided today.

FAHY, Circuit Judge, concurring in part, dissenting in part.

I concur with respect to the grand jury question and the validity of the subcommittee, but would grant a new trial so that the trier of the facts may apply the principles laid down today in No. 11081, Quinn v. United States.

BAZELON, Circuit Judge, with whom EDGERTON, Circuit Judge, concurs, dissenting.

The court affirms the ruling below that appellant did not invoke the privilege against self-incrimination under the Fifth Amendment. I do not reach that issue because, as the record shows, appellant did state some grounds,[1] not plainly frivolous, for his objection to answering. Under the view I expressed in Bart and Quinn, there could be no valid conviction unless the trial court found "from all the circumstances that (1) the witness was clearly apprised * * * whether the grounds for his objection to answering were accepted or rejected, and that (2) if rejected, he was given another opportunity to answer."[2] Although Judge CLARK'S opinion alludes to this problem, it neither meets nor discusses it.[3]

By agreeing with the Subcommittee chairman that appellant's "conduct disclosed a flagrant attitude toward the committee,"[4] the trial court did not avoid the necessity for determining whether or not the witness had been "clearly apprised." Concededly the record reveals matters which might be said to reflect an adverse ruling by the Committee on the appellant's objections.[5] But these matters are not

---

1. He at least claimed protection of First Amendment rights and lack of pertinency. J.A., p. 168.

2. Quinn v. United States, 91 U.S.App.D. C. 344, 203 F.2d 33.

3. 91 U.S.App.D.C. 378, 203 F.2d 56, 57.

4. J.A., p. 226.

5. The indictment charges appellant with refusing to answer 68 questions in as

many counts. After appellant stated the grounds for his objection to answering the question involved in Count 1, the following occurred:

"Mr. Tavenner [Committee counsel]. Your replies are a refusal to comply with the request to answer it?

(Witness confers with his counsel.)

"Mr. Moulder [Subcommittee chairman]. The record will reveal that you have not answered the question." Hear-

conclusive. And we should not on appeal invoke our judgment to resolve a factual conflict on an essential element of the crime—namely, intent to violate the statute.[6] That is the function, in the first instance, of the court below. Since I am not convinced from an examination of the entire record that the court below, sitting without a jury, took the correct view of the governing principles, I would reverse for a new trial.

I would reverse and remand for an additional reason. The trial court erred in denying appellant's request for a hearing in connection with his attempt to show that Government employees were disqualified as grand jurors in this particular case. I have set forth the reasons for this view in Quinn v. United States,[7] where the same issue arose under identical circumstances.

ings before the Committee on Un-American Activities, 81st Cong., 1st Sess. 839–40 (1949).

6. 11 Stat. 155 (1857), as amended, 52 Stat. 942 (1938) 2 U.S.C.A. § 192.

7. 91 U.S.App.D.C. 344, 203 F.2d 20.